IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION
FILED
September 22, 2005
CLERK, U.S. DISTRICT COURT

| | |
|---|---|
| **DAISYTEK INTERNATIONAL CORPORATION, et al.,** § § § | |
| *Appellants,* § § | |
| v. § | CA 3:04-CV-02296-R |
| **DSLANGDALE TWO, L.L.C., et al.** § § | |
| *Appellees.* § | |

## MEMORANDUM OPINION AND ORDER

J. Gregg Pritchard, Trustee ("Trustee"), of the D.I.C. Creditors' Trust ("Trust"), and Daisytek (Canada), Inc. ("Canada") (Trustee and Canada, collectively, "Appellants" or "Purchasers"), appeal the Bankruptcy Court's judgment (1) denying Purchasers' Motion for Summary Judgment on the grounds that the indemnity provision of the Asset Purchase Agreement ("APA") at issue is not limited by its express terms to claims brought by third parties, and (2) granting the Motion of Summary Judgment of DS Langdale Two, L.L.C. ("Langdale Two") and DS Langdale Three, Inc. ("Langdale Three") (Langdale Two and Langdale Three, collectively, "Appellees" or "Sellers") regarding the amount of the second "growth earnout payment" ("GEP"). Having carefully considered the briefs and record on appeal, the Court AFFIRMS the Bankruptcy Court's judgment.

## BACKGROUND

In June 2001, Sellers entered into an APA with Appellants under which Sellers sold the assets of two highly successful businesses - Digital Storage and Digital Storage Canada. As consideration, Sellers were to receive, among other things, two GEPs based on the profitability of the two businesses for the two succeeding twelve month periods following the signing of the APA.

Pursuant to Section 3.5(a) of the APA, Daisytek International Corporation ("Parent") was

to pay Sellers the GEP "upon attainment of certain targeted levels of profits before taxes. . . ("PBT")" in its operation of Digital Storage, Inc.. Under Section 3.5(b), calculating the GEP was initially the responsibility of Purchasers' Chief Financial Officer, Richard Burke ("Burke"). Within ninety days of the end of the applicable twelve-month period, Purchasers were to deliver to Seller a statement ("GEP Statement") of Burke's PBT and GEP calculations. According to Section 3.5(c), upon receipt of the GEP Statement, Sellers had thirty business days to dispute the amount of the proposed GEP. Any disputes arising during that time period were to be resolved by Purchasers and Sellers, and if resolution between the parties was impossible within twenty days of Purchasers' receipt of the GEP Statement, the dispute was to be settled conclusively by a duly designated Accounting Firm.

On June 3, 2003, Parent filed a voluntary petition in bankruptcy pursuant to Chapter 11 of the Bankruptcy Code. According to Sellers, Parent was not obligated to make the GEP until June 13, 2003. Thus, Parent was prevented from paying the second GEP pursuant to Bankruptcy Code §§ 362(a)(6) and 549. Sellers brought an adversary proceeding against Purchasers and Parent, alleging breach of contract for, among other things, the failure of Parent to pay the GEP allegedly owed and the subsequent failure of Purchasers to pay pursuant to an indemnity provision in the APA.

In February 2004, Sellers and Purchasers filed cross-motions for summary judgment in Bankruptcy Court. Sellers sought a determination that both Parent and Purchasers were liable for the second GEP pursuant to Sections 3.5(a) and (e) of the APA (direct liability), and that Section 10.4, the indemnity provision, obligated Purchasers to indemnify Sellers for Parent's failure to pay the second GEP. In its opposition to Seller's Motion for Summary Judgment, Parent admitted liability for the GEP at issue, but disputed the amount claimed. In its own Motion for Partial Summary Judgment, Sellers contested both direct liability and indemnification.

The Bankruptcy court entered its First Order on Motions for Summary Judgment ("First MSJ Order") on April 20, 2004, granting Purchasers' cross-motion for summary judgment only on the narrow point of direct liability. The Bankruptcy Court found that no term of the APA imposed an obligation upon the Purchasers to pay the GEP. The Bankruptcy Court then granted

**MEMORANDUM OPINION AND ORDER – PAGE 1**

the Seller's motion for summary judgment, finding that Parent owed the Second GEP, that it was in default, and that Purchasers must therefore indemnify Sellers by making the payment.  In finding that the indemnity provision was not limited to claims brought by third parties, the Bankruptcy Court cited *Ingersoll-Rand Co. v. Valero Energy Corp.*, 997 S.W.2d 203 (Tex. 1999), noting that although a third party claim situation was the "most common scenario" for a Texas indemnity, it was not the only possible scenario.  *Ingersoll-Rand Co.*, 997 S.W.2d at 208.

On July 19, 2004, the Bankruptcy Court entered its Second Order on Motions for Summary Judgment ("Second MSJ Order"), holding that only Sellers have the right to challenge the calculation of the GEP.  Purchasers' timely appeal, filed February 14, 2005, followed.

## ANALYSIS

**A.    Standard of Review**

As an appellate court reviewing bankruptcy decisions, the United States District Court uses the same standard of review generally applied by a federal court of appeals.  *See Webb v. Reserve Life Ins. Co.* (*In re Webb*), 954 F.2d 1102, 1104 (5th Cir. 1992).  Where, as here, the Bankruptcy Court entered a summary judgment, all issues were resolved as a matter of law and the Court must conduct a *de novo* review, applying a clearly erroneous standard of review to the Bankruptcy Court's findings of fact.  *See Rolling Plains Prod. Credit Ass'n v. Cook* (*In re Cook*), 169 F.3d 271, 274 (5th Cir. 1999).  Under the clearly erroneous standard, the Court must defer to the Bankruptcy Court's findings of fact unless it is left with the definite and firm conviction that a mistake has been made.  *See Cajun Elec. Power Coop. Inc. v. Southwestern Elec. Power Co.* (*In re Cajun Elec. Power Coop.*), 150 F.3d 503, 513 (5th Cir. 1998), *cert. denied*, 526 U.S. 1144 (1999).

**B. Liability Under the Indemnity Provision of the APA**

As Sellers did not appeal the Bankruptcy Court's First MSJ Order finding a lack of direct liability, the only issue on liability facing this Court is whether Purchasers must indemnify Sellers pursuant to Section 10.4, the indemnity provision, of the APA.

Texas contract law controls interpretation of the relevant clause in this case.  Under

Texas law, the interpretation of an unambiguous contract is a legal question. *Steuber Co. v. Hercules, Inc.*, 646 F.2d 1093, 1098 (5th Cir. 1981). If the contract terms are susceptible to only one reasonable construction, the contract is unambiguous and will be enforced as written. *Guaranty Natl. Ins. Co. v. Azrock Industries Inc.*, 211 F.3d 239, 243 (5th Cir. 2000). In Texas, the court's primary concern is to give effect to the written expression of parties' intent. *Nat'l Union Fire Ins. Co. v. Care Flight Air Ambulance Service, Inc.*, 18 F.3d 323, 328-29 (5th Cir. 1994). In doing so, the court must read all parts of the agreement together in order to ensure that each provision of the contract is given its intended effect. *Id.* at 329; *see also Sulzer Carbomedics, Inc. v. Oregon Cardio-Devices, Inc.*, 257 F.3d 449 (5th Cir. 2001). Further, there are no "special rules" for indemnity clauses - Texas courts have consistently recognized that an indemnity contract should be construed like any other contract. *See, e.g., Gulf Ins. Co. v. Burns Motor, Inc.*, 22 S.W. 3d 417, 423 (Tex. 2000).

> Section 10.4(ii), the provision at issue here, states in relevant part:
>> Parent and Purchaser, jointly and severally, agree to indemnify and hold harmless the DS Parties and their respective. . . successors. . . from, against, for and in respect of any and all damages. . . suffered, sustained, incurred or required to be paid by any of them by reason of. . . (ii) any failure by Purchaser or Parent to observe or perform its covenants and agreements set forth in this Agreement. . .

Purchasers contend indemnity is limited to claims by a person or entity to whom Sellers have been found liable. They would have the Court rule that because Section 10.4(ii) is an indemnity clause, a prerequisite for a claim under this clause is the liability of the Seller to other persons besides the Purchasers, whether by debt, judgment, or some other obligation of liability. The Court recognizes, as did the Bankruptcy Court, that the "more common scenario" for an indemnification claim in Texas "involves three separate and distinct parties: plaintiff (party one), indemnitee (party two), and indemnitor (party three)." *Ingersoll-Rand Co. v. Valero Energy Corp.*, 997 S.W. 2d 203, 208 (Tex. 1999). No Texas case, however, supports the proposition that this is the *only* scenario that may apply to a claim for indemnification. In fact, Texas law has enforced indemnification claims where the indemnitor, one party to the contract, sought damages from the indemnitee, the other party to the contract. *See, e.g., id.* at 208.

**MEMORANDUM OPINION AND ORDER – PAGE 1**

The phrase "Parent and Purchaser, jointly and severally, agree to indemnify and hold harmless the DS Parties and their respective. . . successors. . . from. . . any failure by Purchaser or Parent to observe or perform its covenants and agreements set forth in this Agreement" is unambiguous when applied to these facts. The payment of the GEPs was an agreement set forth by the APA, and so Purchasers must indemnify the Seller for the Parent's failure to pay. The Court enforces this clause as written.

A court should attempt to harmonize and give effect to all contract provisions so that none is rendered meaningless. *See, e.g., Sulzer Carbomedics, Inc. v. Oregon Cardio-Devices, Inc.*, 257, F.3d 449 (5th Cir. 2001). That is to say, no single provision taken alone will be given controlling effect - all of the provisions must be considered in reference to the other. *Id.* at 456. Contrary to Purchasers' position, here the objective intent of the provision at issue is clear and does not render Section 10.6, entitled "Notice of Loss," Section 10.7, entitled "Right to Defend," Section 10.8, entitled "Cooperation,"[1] or any other portion of the APA meaningless.

## C. Review and Calculation of the GEP under the APA

Using the same rules of construction above to Article 3 of the APA, the Court finds that Parent does not have the right to review and dispute the calculation of the GEP. Section 3.5 of the APA does entitles Seller to a GEP paid by Parent. The parties agreed that Purchasers' Chief Financial Officer ("CFO") would calculate the GEP, and that Sellers would have the right to review. While the APA provides for a dispute resolution procedure should Purchasers and Sellers dispute the calculations, no part of this provision provides the same review for Parent. By granting Sellers' motion for summary judgment as to the calculation contained in their motion, the Bankruptcy Court was merely apply the unambiguous terms of the contract. The

---

[1] In fact, by specifically governing situations where indemnity claims arise from third party claims, Sections 10.6, 10.7, and 10.8 support the conclusion that Section 10.4(ii) is not limited to third party claims. Why make provisions that specifically govern third party claims if third party claims are already somehow intrinsic to the definition of an indemnity provision?

**MEMORANDUM OPINION AND ORDER – PAGE 1**

Court enforces the APA terms as written, affirming the Bankruptcy Court's order granting Sellers' motion for summary judgment as to the calculation contained in their motion.

## CONCLUSION

For the foregoing reasons, the judgment of the Bankruptcy Court is AFFIRMED.

**IT IS SO ORDERED.**
**SIGNED**: **September 22, 2005.**

_____
**JERRY BUCHMEYER
SENIOR UNITED STATES DISTRICT JUDGE
NORTHERN DISTRICT OF TEXAS**